
John A. Vogt (State Bar No. 198677)
javogt@jonesday.com
Edward S. Chang (State Bar No. 241682)
JONES DAY
3161 Michelson Drive
Suite 800
Irvine, CA 92612.4408
Telephone:  +1.949.851.3939
Facsimile:  +1.949.553.7539

Michael A. Carvin (*Pro Hac Vice*)
macarvin@JonesDay.com
James M. Burnham (*Pro Hac Vice*)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001.2113
Telephone:  +1.202.879.3939
Facsimile:  +1.202.626.1700

Michael E. Rosman (*Pro Hac Vice*)
rosman@cir-usa.org
Center for Individual Rights
1233 20th St. NW, Suite 300
Washington, DC 20036
Telephone:  +1.202.833.8400

***ATTORNEYS FOR PLAINTIFFS***

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| REBECCA FRIEDRICHS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CALIFORNIA TEACHERS ASSOCIATION, et al., <br><br> Defendants. | Case No. 8:13-cv-00676-JST-CW <br><br> **PLAINTIFFS' NOTICE OF MOTION, MOTION FOR JUDGMENT ON THE PLEADINGS, AND MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS** <br><br> Judge: Hon. Josephine Staton Tucker <br> Hearing Date: August 9, 2013 <br> Time: 2:30 p.m. <br> Courtroom: 10A <br> Trial Date: None Set |

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE Plaintiffs Christian Educators Association International ("CEAI"), Jelena Figueroa, George W. White, Jr., Scott Wilford, Kevin Roughton, Peggy Searcy, Jose Manso, Harlan Elrich, Rebecca Friedrichs, Karen Chavez-Cuen, and Irene Zavala (collectively, "Plaintiffs") move this Court to enter judgment on the pleadings.

This Motion will be and is based upon this Notice of Motion and Motion; the Memorandum of Points and Authorities attached hereto; the pleadings, papers, and other documents on file herein; and such further evidence or argument as the Court may properly consider at or before the hearing on this Motion.

Dated: July 9, 2013

Jones Day

By:    */s/ John A. Vogt*
       John A. Vogt

Michael A. Carvin (*Pro Hac Vice*)
James M. Burnham (*Pro Hac Vice*)
JONES DAY
51 Louisiana Avenue
Washington, DC 20001-2113

Michael E. Rosman (*Pro Hac Vice*)
Center for Individual Rights
1233 20th St. NW, Suite 300
Washington DC 20036

ATTORNEYS FOR PLAINTIFFS

# INTRODUCTION

Based on the undisputed facts and currently binding precedent, this Court could and should enter final judgment in this proceeding today. Both sides agree that the evidence Plaintiffs have filed and that Defendants (apparently) wish to file would have no effect on that outcome. Plaintiffs therefore move for judgment on the pleadings. However, because Plaintiffs' claims are presently foreclosed by *Abood v. Detroit Bd. of Ed.*, 431 U.S. 209, 97 S. Ct. 1782, 52 L. Ed. 2d 261 (1977), and *Mitchell v. L.A. Unified Sch. Dist.*, 963 F.2d 258 (9th Cir. 1992)—the decisions Plaintiffs will seek to have overturned on appeal—and because this Court is currently bound to follow those decisions, *see, e.g.*, *Agostini v. Felton*, 521 U.S. 203, 237, 117 S. Ct. 1997, 2017, 138 L. Ed. 2d 391 (1997), Plaintiffs concede that this Court should deny their Motion and, instead, grant judgment on the pleadings *to Defendants*, as Defendants suggested was proper in their Answer.

## I.     Both Sides Agree That Judgment On The Pleadings Is Proper.

This Court should enter judgment on the pleadings on the basis of Plaintiffs' Complaint and Defendants' Answer. The Answer admits all of the facts necessary to fully adjudicate this dispute—both in this Court and on appeal—and entering judgment on the pleadings would avoid any of the supposed prejudice that Defendants fear would result from an "incomplete" record. There is thus no reason to drag out this proceeding with irrelevant evidentiary submissions.

The Defendant Unions claim that they need time to gather evidence in order to contradict the evidence that Plaintiffs filed in conjunction with their Motion for a Preliminary Injunction. *See* Defendants' Application, Dkt. No. 78, at 3 (hereinafter "Defs. Application") (arguing that the Unions need to file "substantial evidence" in response to Plaintiffs' "thirty (30) exhibits"). That is incorrect, as Defendants themselves confirm when they admit that their evidence will have no effect on the outcome. *Id.* at 6. But even if it were true that denying Plaintiffs' Motion for a Preliminary Injunction on the current record would somehow prejudice the

Defendants, then entering judgment on the pleadings avoids the issue entirely.

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). "Judgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). Given that *all sides agree* that *Abood* and *Mitchell* currently foreclose Plaintiffs' claims in this Court, the proper and most efficient course is for this Court to promptly enter judgment on the pleadings for Defendants.

The Defendants have already taken the position that Plaintiffs' Complaint should be dismissed. Their Answer clearly states: "Plaintiffs' Complaint fails to state a claim upon which relief can be granted." Answer, Dkt. No. 36, at 24; *see also id.* at ¶ 85 ("The Unions deny that stare decisis 'may' restrict the ability of lower federal courts to grant Plaintiffs the relief they seek, because those decisions, and other controlling precedent, *require* denial of the relief Plaintiffs seek."). Plaintiffs therefore request that the Court accept Defendants' unequivocal assertion and promptly enter judgment on the pleadings in Defendants' favor, as (presently) controlling precedent requires this Court to do. Given the parties' agreement that this outcome is inevitable, there is no reason to delay judgment so that the parties can go beyond the pleadings and litigate a host of immaterial factual issues. Such delay serves no purpose other than to waste the Court's time and impose additional irreparable harm on Plaintiffs. *See, e.g.*, *Valle Del Sol Inc. v. Whiting*, 709 F.3d 808, 828 (9th Cir. 2013).

It makes no difference that Defendants styled their contention that Plaintiffs' Complaint "fails to state a claim upon which relief can be granted," Answer at 24, as an "affirmative defense" rather than as a formal "Motion for Judgment on the Pleadings." This Court has the power to enter judgment on the pleadings on Plaintiffs' claims *regardless* of whether Defendants lodge a formal request. *See,*

*e.g.*, *Wong v. Bell*, 642 F.2d 359, 361-62 (9th Cir. 1981) ("A trial court may act on its own initiative to note the inadequacy of a complaint and dismiss it for failure to state a claim ...." (citing 5 C.A. WRIGHT & A.R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 at 593 (1969)); *Hoang Van Tu v. Koster*, 364 F.3d 1196, 1200 (10th Cir. 2004) ("Any party may move for judgment on the pleadings, or the court may act sua sponte." (quoting 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 12.38 & n. 3 (3d ed. 2003)); *Lyman v. Loan Correspondents, Inc.*, No. 06-cv-01174, 2009 WL 3757398, at *1 (C.D. Cal. Nov. 6, 2009) ("A district court may *sua sponte* dismiss claims by granting judgment on the pleadings.").

In sum, expedient entry of judgment on the pleadings would avoid any supposed prejudice to Defendants from Plaintiffs' evidentiary submissions, would conserve the Court's and the litigants' resources by terminating the present proceeding in this Court so that Plaintiffs may take their claims to fora with the authority to vindicate them, and would minimize the irreparable harm that Plaintiffs suffer each day this proceeding is prolonged.

## II. Defendants' Admissions Confirm That Judgment On The Pleadings Is Proper.

Review of the pleadings confirms that there "is no issue of material fact in dispute," *Fleming*, 581 F.3d at 925, because Defendants have admitted all of the material facts. Specifically, Defendants admit that:

- They do, in fact, operate an agency shop arrangement in the State of California: "[T]he State of California and its public school districts, in cooperation with the Defendants, maintain an 'agency shop' arrangement that may require nonmember public school teachers to pay an agency fee as a condition of employment ...." Answer at ¶ 2.
- Teachers who do not want to join the Unions must nonetheless pay an agency fee to the Unions: "[N]onmember teachers are required to contribute to the Unions' 'chargeable' expenditures, unless they have a

    genuine religious belief that prohibits them from supporting a labor organization." *Id.* ¶ 2; *see also id.* ¶ 4 ("[U]nion-security arrangements require objecting feepayers to pay the chargeable portion of the fee.");

- Teachers who do not wish to subsidize political and non-chargeable expenditures must affirmatively opt out of doing so every year: "[N]onmember teachers who wish to avoid contributing to a union's 'non-chargeable' expenditures are generally required to complete and return a simple one-page form noting their objection, which form is provided by CTA annually to all non-members." *Id.* ¶ 2.

- The Unions take positions in the course of collective-bargaining that are inconsistent with the beliefs of some teachers: "The Unions admit that, in the course of collective bargaining, they sometimes take positions that may be viewed as politically controversial or may be inconsistent with the beliefs of some teachers." *Id.* ¶ 7.

- The Plaintiffs are, in fact, public school teachers who are subjected to this scheme and who have standing to bring their claims.[1] *See id.* ¶ 11 ("[T]he Unions admit that Plaintiff Friedrichs is a public school teacher in the Savanna School District, that she resigned her union membership, and that she has opted out of paying the non-chargeable portion of the agency fees."), ¶ 12 (substantively identical admission for Wilford), ¶ 13 (Figueroa), ¶ 14 (White), ¶ 15 (Roughton), ¶ 16 (Searcy), ¶ 17 (Manso), ¶ 18 (Elrich), ¶ 19 (Cuen).

---

[1] The Defendant Unions dispute whether Plaintiff Zavala has standing to bring her second claim (opt-out), *see* Answer at 24; and whether Plaintiff Christian Educators Association International has standing at all, *id.* at 24. Because the other nine Plaintiffs clearly have standing—as the Unions admit in their Answer—"the court need not consider the standing of [these two] plaintiffs." *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 918 (9th Cir. 2004).

These specific admissions suffice to decide this dispute. Plaintiffs' first claim is that the First Amendment forbids compelled financial support for *any* of the activities and speech of public employee unions. If Plaintiffs are correct, then the only facts that matter are those outlined above—*i.e.*, that Plaintiffs are public school teachers who "are required to contribute to the Unions' 'chargeable' expenditures." *Id.* ¶ 2. Plaintiffs' second claim is that the First Amendment requires the Unions to obtain affirmative consent from public employees (an "opt in") before taking any money out of their paychecks to support expenditures on speech and conduct that the Unions admit are political and non-chargeable under *Abood* and its progeny. Here too, if Plaintiffs are correct, then the only facts that matter are those noted above—*i.e.*, that Plaintiffs are public school teachers who are annually required to "complete and return a simple one-page form that CTA provides to them annually or, if they prefer, send in a letter or postcard expressing their intent to object to and/or challenge the Union's calculation of the chargeable amount." *Id.* ¶ 3. No evidence is necessary to rule on these claims, given Defendants' concession of these undisputed (and indisputable) facts. The Court should thus enter judgment on the pleadings as soon as is practicable.

### III. None Of The Factual Issues That Defendants Claim Need Clarifying Are Material.

Defendants apparently want to linger in this Court so that they can litigate legally irrelevant factual disputes, as evidenced by the various issues that their Application claims are "incomplete." According to Defendants, they will be "severe[ly] prejudice[d]" if unable to challenge the inferences that Plaintiffs have raised. Defs. Application at 2. In making this assertion, Defendants obviously misunderstand their contention—and Plaintiffs' concession—that Plaintiffs have failed to state a claim that is colorable at this time in this Court. *See* Answer at 24. A judgment on *that* basis could not possibly prejudice the Defendants, as the facts alleged by Plaintiffs would merely be *assumed*—rather than *resolved*—and then

*only* for purposes of *that* pleadings-based judgment. Any of these factual disputes would become material only if, on appeal, Plaintiffs succeeded in establishing that their claims *are* cognizable because *Abood* and *Mitchell* are no longer good law. And in that event, the parties will have a full and fair opportunity to litigate all the factual issues they want on remand, when it would become this Court's duty to determine whether Plaintiffs have proven facts entitling them to relief in a post-*Abood* and post-*Mitchell* world. But at *this* stage, *none* of the factual issues that Defendants seek to litigate have *any* legal relevance.

A survey of the specific factual issues raised in Defendants' Application confirms the point. *First*, Defendants argue that not *all* positions they take in connection with collective-bargaining are political, and that they should be able to depose the Plaintiffs to find out which positions, specifically, those Plaintiffs object to. Defs. Application at 3-4. But Defendants have already admitted that "in the course of collective bargaining, they sometimes take positions that may be viewed as politically controversial or may be inconsistent with the beliefs of some teachers." Answer at ¶ 7. Given Plaintiffs' claim that it violates the First Amendment for Defendants to take *any* money from nonmembers who object to *any* of the Defendants' advocacy, it does not matter whether a nonmember objects to 1% or 99% of Defendants' positions (or simply does not want his money taken for any reason). There are no partial violations of the First Amendment.

There is, therefore, no merit to Defendants' contention that Plaintiffs' affidavits are somehow deficient insofar as they contain a "boilerplate" statement of each Plaintiff's "object[ion] to many of the public-policy positions that the Unions advocate." *See* Defs. Application at 4 and n.5 (quoting affidavits). The only facts that matter for Plaintiffs' claims are the undisputable facts that Plaintiffs—all of whom have chosen not to join the Union and all of whom have opted-out of paying for non-chargeable offenses—(1) have their money confiscated to pay for collective-bargaining, an act that the Defendants admit sometimes involves

"politically controversial" actions, and (2) must annually opt out of paying for "non-chargeable" activities that Defendants themselves admit are political activities not germane to collective-bargaining. Thus, it is legally irrelevant *which* policy positions Plaintiffs object to, and the Defendants do not even pretend otherwise. Moreover and again, if the appellate courts determine that Plaintiffs' legal theory is overbroad—such that detailing which policy positions an individual rejects somehow becomes relevant—those factual issues will *then* be fully contestable on remand, without any prejudice to Defendants.

*Second*, Defendants dispute Plaintiffs' suggestion that Defendants use certain benefits to entice individuals into becoming union members. Defs. App. at 5. But again, any dispute about whether the Defendants use such benefits as enticements is *immaterial* from both sides' perspectives, and, moreover, would *never be resolved* in a judgment on the pleadings. Plaintiffs' contention is that compelling the payment of agency fees by *nonmembers* is always unconstitutional *regardless* of the collateral issue of whether the Unions game the collective-bargaining process in order to induce membership. And under (currently) binding precedent, the Court must reject Plaintiffs' claim *regardless* of whether the Unions engage in this sort of conduct.[2]

*Third*, Defendants quarrel with Plaintiffs' suggestion that CTA's and NEA's expenditures are not germane to collective-bargaining activities. But even if Defendants are correct, Plaintiffs' claim is that it is unconstitutional to require

---

[2] In any event, Plaintiffs note parenthetically that there is no dispute about the underlying *facts*, just about the *inferences* regarding Defendants' motives to be drawn from those facts. That is so because Defendants concede that nonmembers are "not eligible for certain benefits provided through the Unions"; that "teachers who 'opt out' are unable to obtain the disability insurance available to members"; and that "Union membership benefits are available to any member of the bargaining unit who exercises his or her free choice to join and maintain membership in the Union." Answer at ¶ 64.

nonmembers to subsidize *any* union expenditures by *any* public-employee union—just as it is unconstitutional to require that nonmembers subsidize the expenditures of local unions, whose role in collective-bargaining Plaintiffs have not disputed. This dispute over *how much* CTA and NEA spending goes to collective-bargaining is immaterial to resolving Plaintiffs' claims.

*Finally*, Defendants challenge Plaintiffs' claim that the opt-out regime for nonchargeable expenses burdens nonmembers and creates a risk that individuals will accidentally fail to prevent the Defendant Unions from spending their money on admittedly political activities those individuals do not support. But Defendants, again, completely overlook the *legal* contention Plaintiffs have raised, which is that the entire concept of requiring Plaintiffs to opt out—whether or not doing so is burdensome, and whether or not any nonmembers have erroneously failed to opt out in the past—violates the First Amendment by placing the onus of action on the party whose constitutional rights are at stake. Defendants admit that Plaintiffs are required to annually "opt out" of paying for Defendants' nonchargeable expenses. Answer at ¶ 62. And Plaintiffs admit that under *Mitchell*, those facts do not entitle them to relief. That is all that matters.

The most sensible course, therefore, is to dispense with time-consuming and immaterial discovery on irrelevant factual issues, and instead promptly enter judgment on the pleadings for Defendants, enabling Plaintiffs to take their *legal* argument to the appellate courts with the authority to vindicate it.

In short, Defendants cannot have it both ways: they cannot argue that Plaintiffs' allegations fail to state a claim even if those allegations are true, while at the same time quibbling over which facts are actually true. Defendants will have a full and fair opportunity to litigate the correctness of Plaintiffs allegations *if and when* Plaintiffs prevail on appeal. But Defendants should not be permitted to delay this proceeding—and impose additional irreparable harm on Plaintiffs—by kicking

up dust over factual issues that cannot possibly matter at this stage of the litigation.[3]

## .CONCLUSION

While Plaintiffs believe that *Abood* and *Mitchell* should be and will be overturned on appeal, they acknowledge that those decisions are currently binding on this Court.  Defendants have expressed concern about prejudice resulting from considering the evidence Plaintiffs have filed.  Plaintiffs therefore respectfully request that the Court render that evidence irrelevant by entering judgment on the pleadings for Defendants, as Defendants have effectively requested in their Answer.  Because Plaintiffs suffer additional irreparable harm every day that this unconstitutional regime continues, they respectfully request that the Court enter judgment as soon as is practicable.

Dated:  July 9, 2013

Jones Day

By:     */s/ John A. Vogt*
            John A. Vogt

Michael A. Carvin (*Pro Hac Vice*)
James M. Burnham (*Pro Hac Vice*)
JONES DAY
51 Louisiana Avenue
Washington, DC 20001-2113

Michael E. Rosman (*Pro Hac Vice*)
Center for Individual Rights
1233 20th St. NW, Suite 300
Washington DC 20036

ATTORNEYS FOR PLAINTIFFS

---

[3] In any event, as discussed in the Application, Plaintiffs' proposed timeframe gives Defendants ample time and opportunity to present whatever "evidence" they desire about *their* activities—even though Defendants admit such evidence would be immaterial—without causing additional delay for the purpose of taking extraneous discovery from Plaintiffs.